25CA1395 Hart v Appling 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1395
Weld County District Court No. 24CV30469
Honorable Todd Taylor, Judge

---

William Hart,

Plaintiff-Appellant,

v.

Rhonda Appling,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE TOW
Harris and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

J. O'Keefe, PLLC, Joseph O'Keefe, Colorado Springs, Colorado, for Plaintiff-Appellant

Wick & Trautwein, LLC, Michael S. Samelson, Cassie L. Williams, Amanda E. Adam, Fort Collins, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, William Hart, appeals the trial court's judgment, entered after a bench trial, dismissing his unjust enrichment claim and finding for defendant, Rhonda Appling, on her tortious interference with contract counterclaim.  We affirm.

## I.    Background

¶ 2    At a bench trial, the court heard evidence of the following.

¶ 3    Hart and Appling began a relationship and later moved into a house in Denver that they purchased together.  When Appling discovered that Hart consistently abused alcohol, she ended their relationship and moved out of the house.

¶ 4    Appling rented a different house in Loveland.  In December 2022, Appling sent a text to Hart that said, "[F]or us to be together[,] you need to be sober and committed to staying sober."  Hart responded, "Okay.  I cannot do this anymore by myself.  I have tried to so much."

¶ 5    Hart moved into Appling's guest room.  After Hart started drinking again, however, Appling made him leave.  Hart rented his own place near Appling's house.

¶ 6    Hart was later charged with assault after breaking his neighbor's nose.  He entered into a plea agreement requiring that he

receive probation supervision and that he, among other things, complete a substance abuse evaluation and treatment and abstain from drinking. Appling allowed Hart to stay in the guest room in her house again because he could not return to his apartment (due to a restraining order being issued following the assault) and because he was once again abstaining from alcohol.

¶ 7    Hart and Appling agreed to start looking to buy another house where they could live together. But because Hart's drinking had essentially forced Appling to move out of their Denver house, Appling wanted to be sure that that would not happen again. She said that Hart had agreed that everything could be in her name, so that if something happened, she would not have to move again and the house would be hers.

¶ 8    After finding a house to purchase in Windsor (the Windsor house) and at the mortgage company's behest, Hart executed a gift letter in which he gave $200,000 to Appling to be applied toward the purchase. The gift letter stated, "[N]o repayment of this gift is expected or implied either in the form of cash or future services of the recipient," and "[A]ny funds given to the homebuyer were not

2

made available to the donor from any person or entity with an interest in the sale of the property."

¶ 9    Appling testified that she would not have moved forward with the Windsor house purchase had Hart not signed the gift letter. She testified that at the time of the gift letter's execution, by signing the document, she understood that Hart would not ask for the money back and did not have any ownership interest in the Windsor house. She testified that she looked up gift letters online and learned that the funds do not need to be paid back, and if they are, it is mortgage fraud. Hart and Appling were not engaged at the time of the execution of the gift letter.

¶ 10    Appling purchased the Windsor house in May 2023 and is the sole owner. The down payment was approximately $125,000. Appling and Hart moved into the Windsor house.

¶ 11    Hart was released from his probation supervision early. The following day, Hart was drunk, which led to a dispute with Appling. Appling obtained a temporary and then permanent civil protection order against Hart. Hart moved out and was served with the protection order.

¶ 12    Months later, Hart sent multiple false and threatening communications to Appling's employer, Boyd Lake Veterinary Center. Hart also published a false Google review of Boyd Lake Veterinary Center referencing Appling. And Hart filed a complaint against Appling with the State Board of Veterinary Medicine, which was subsequently dismissed. Hart's actions impacted Appling's ability to work, but her employer took no adverse actions against her or her employment status.

¶ 13    Hart sued Appling for breach of contract and unjust enrichment. Appling filed a counterclaim against Hart for tortious interference with contract.

¶ 14    Before the case proceeded to trial, Appling moved to dismiss Hart's breach of contract claim under C.R.C.P. 12(b)(5), and the court granted the motion.

¶ 15    The case proceeded to trial on Hart's unjust enrichment claim and Appling's counterclaim.[1] At the conclusion of the trial, the trial

---

[1] At trial, in addition to the $125,000 down payment, Hart claimed he was entitled to $5,000 for furniture he purchased for the Windsor house and $32,000 for payments he allegedly made towards Appling's loans, so that she could qualify for a lower monthly mortgage payment. The trial court found that Hart presented no evidence to substantiate these amounts.

court found that Appling was credible and Hart was not. The court found that Appling insisted that the Windsor house be titled only in her name in case Hart started drinking again and that Hart's ability to continue residing in the Windsor house was conditioned on him remaining sober. The court found that Hart, a former corporate attorney, was aware of the significance of signing the gift letter. And the court found that Hart intentionally and improperly interfered with Appling's employment.

¶ 16    The trial court found for Appling on both claims and therefore dismissed the unjust enrichment claim. The court ordered Hart to pay Appling $60,560 in damages.

## II.    Hart's Compliance with C.A.R. 28

¶ 17    As an initial matter, Appling contends that we should strike Hart's opening brief because it failed to comply with C.A.R. 28 and misrepresented the trial court's judgment. Appling primarily takes issue with the fact that Hart lists over twenty "statement[s] of issues" presented for review but then does not repeat many of these in his argument sections. We decline to strike Hart's brief but, instead, will consider these omissions insofar as they reflect a failure to develop his arguments.

¶ 18    Appling also contends that Hart's brief fails to (1) demonstrate preservation with record support; (2) identify his requested relief; (3) cite legal authority; and (4) cite the trial court's ruling. Though Hart's brief lacks a reference to the precise locations in the record where the issues were raised, it does state, under separate headings, whether the issues were preserved. Hart's brief includes a short conclusion stating the precise relief sought, cites legal authority, and challenges the trial court's judgment. Thus, while Hart's brief is not a model of clarity, we conclude that it sufficiently complies with C.A.R. 28 such that striking it is not necessary. *Cf. O'Quinn v. Baca,* 250 P.3d 629, 631 (Colo. App. 2010) (observing that the appellate rules are not mere technicalities but rather are designed to facilitate appellate review). Therefore, we exercise our discretion to address Hart's appeal on the merits, keeping in mind that Hart bears the risk of his inadequate briefing to the extent he failed to sufficiently develop or support his appellate claims.

### III.    Hart's Unjust Enrichment Claim

¶ 19    As noted, we will only address Hart's developed arguments contained in the argument sections of his brief for these issues. In other words, we will not address the items in Hart's "statement of

issues" list to the extent he does not develop any argument as to the purported error. *See Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶¶ 39-40 (declining to address conclusory assertions offered without supporting argument or authority).

¶ 20    Hart contends that the trial court erred by rejecting his unjust enrichment claim.[2]  In addition to his overriding challenge to the judgment, as best we can discern, the specifically developed challenges he asserts are that the court (1) acted against the weight of the trial testimony; (2) relied solely on the gift letter to discern his intent; and (3) misapplied the unclean hands doctrine.  After addressing the standard of review and applicable law, we address each of his specific contentions, and then the more general challenge to the judgment.

### A.    Standard of Review and Applicable Law

¶ 21    Review of a judgment following a bench trial presents a mixed question of fact and law.  *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 37.  We review the trial court's factual findings for clear error

---

[2] Hart does not challenge the pretrial dismissal of his breach of contract claim.

and its legal conclusions de novo. *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 55. A factual finding is clearly erroneous only if it has no factual support in the record. *Smith v. City & County of Denver*, 2025 COA 70, ¶ 35.

¶ 22 An unjust enrichment claim is an equitable cause of action. *Bd. of Governors of Colo. State Univ. v. Alderman*, 2025 CO 9, ¶ 32. While we review de novo whether the trial court applied the appropriate test for unjust enrichment, we review the court's ruling on an unjust enrichment claim and the factual basis for that ruling for an abuse of discretion. *See id.*; *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). A trial court abuses its discretion if its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair. *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 63.

¶ 23 Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend on a promise or privity between the parties. *Bd. of Governors*, ¶ 35. To recover under an unjust enrichment theory, a plaintiff must show that (1) at the plaintiff's expense, (2) the defendant received a benefit, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *Id.* In situations involving close

8

confidants, the third prong is governed by the parties' actions expressing mutual purpose, and when confidants act with a mutual purpose, unjust enrichment occurs when one party benefits from an action that is a significant deviation from that mutual purpose. *Lewis*, 189 P.3d at 1143.

### B. Hart's Specific Challenges

#### 1. Trial Testimony

¶ 24    Hart contends that the trial court erred because its judgment was manifestly against the weight of the trial testimony. We disagree.

¶ 25    Hart challenges the trial court's factual finding that the parties agreed that the Windsor house would be titled solely in Appling's name and that Appling would live in it and keep the gifted money should Hart drink again. In doing so, Hart essentially asks us to reweigh the evidence, which we cannot do. *See Colonial Bank v. Colo. Fin. Servs. Bd.*, 961 P.2d 579, 587 (Colo. App. 1998) ("It is not the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses."). In any case, we discern no clear error.

¶ 26    Hart contends that the court ignored that the text message exchange (wherein Hart promised sobriety) occurred months before the Windsor house purchase and that the Windsor house could not be titled in Hart's name because he was not employed at the time of its purchase.  But the court found otherwise based on Appling's testimony — which, again, the court found credible — that

- when the parties had previously lived together in Denver, she had to move out of the house because of Hart's drinking;

- to avoid being in that situation again, she insisted that the Windsor house be titled solely in her name;

- Hart's ability to remain in the house was conditioned on him not drinking; and

- if Hart resumed drinking, he would have to move out.

Because Appling's testimony provides record support for the court's findings, we are bound to accept them.  *See Kruse v. Town of Castle Rock*, 192 P.3d 591, 603 (Colo. App. 2008).

¶ 27    Hart also argues that Appling did not realize that she did not have to repay the gifted money until after the parties separated. But Hart mischaracterizes Appling's testimony in this regard.

Appling's counsel asked her, "Why was it important to you that Mr. Hart sign this gift letter in connection with the funds that he gifted you?" Appling responded that she "read about gift letters online and [if] you Google if a gift letter is provided for a mortgage, do you have to pay back the gift letter? And it says, no, that that is actually considered mortgage fraud." While she did not specifically state when she conducted this internet research, in context, nothing in her answer suggests that it was after the fact. Indeed, she testified that she would not have accepted the funds without the gift letter because she knew she would be unable to pay Hart back. Moreover, even if the inference Hart asks us to draw were a reasonable one, we would not be permitted to substitute it for the inference the trial court, as fact finder, reasonably drew. *See In re Estate of Owens*, 2017 COA 53, ¶ 22 ("It is the trial court's sole province . . . to determine . . . the inferences to be drawn from the evidence." (citation omitted)).

¶ 28    In view of the trial court's record-supported factual findings, we conclude that the court did not err by entering judgment in favor of Appling.

## 2. Gift Letter

¶ 29    Hart contends that there was no other evidence of his intent to gift the money to Appling besides the gift letter.  But Hart cites no published Colorado case, nor are we aware of any, stating that the trial court cannot consider a gift letter to determine the intent of the transferor.  *See Boydstun v. Loveless*, 890 P.2d 267, 269 (Colo. App. 1995) ("[A]n essential requirement of a gift inter vivos is the clear and unmistakable intention to make a gift, and in this regard the intent of the transferor or putative donor is determinative.").  Thus, we discern no error in the court's reliance on the gift letter to do so.

## 3. Unclean Hands

¶ 30    The trial court did not rely on the unclean hands doctrine in its judgment.[3]  Thus, we do not need to address Hart's argument that the unclean hands maxim is inapplicable.

---

[3] Hart cites to the order dismissing his breach of contract claim, as opposed to the judgment, as preserving this issue, but Appling only raised an unclean hands defense as to Hart's unjust enrichment claim.  Thus, we construe his argument as challenging the court's judgment.

## C.    Elements of Unjust Enrichment

¶ 31    Turning to Hart's overarching challenge, we reject his contention that the trial court erroneously rejected his unjust enrichment claim.

¶ 32    The supreme court has stated,

> Courts considering the third prong of an unjust enrichment claim arising from a confidential relationship should look to the factual support establishing the mutuality of purpose of both the giving and receiving parties.  This includes a determination by the trial court of whether both parties' actions indicate that each party possessed the same or similar purpose.  In particular, the trial court should consider whether either party acted in furtherance of or detrimentally relied on the gift or agreement.  Finally, the court should consider the length of time that the parties acted in furtherance of this misunderstanding. In the event that the parties intended the same outcome or the parties' mutual purpose is easily discernable, the trial court should seek by its equity determination to fulfill this failed mutual purpose when one party benefits from acting in significant deviation with this mutual purpose.

*Lewis*, 189 P.3d at 1143.

¶ 33    The trial court found as follows:

> Hart has failed to sustain his burden of proof as to all the elements of unjust enrichment. Because there was no mutual intent for the

repayment of these amounts — and because the parties' mutual agreement was that Hart must refrain from abusing alcohol in order to remain living at the . . . property — Hart has not proved that Appling has been unjustly enriched by retaining his gifts to her. To the contrary, Appling relied to her detriment on Hart's promise that she could retain these funds in the event that he began drinking again and their relationship ended.

¶ 34 Even assuming, without deciding, that Hart met the first two prongs, the trial court did not abuse its discretion by finding that he did not meet the third. Hart contends that there was a significant deviation from the parties' mutual intent because the parties were twice engaged and purchased the Windsor house to "forever live a fairytale life together." He contends that this was clearly Hart's intent and that Appling's intent can be inferred from her agreement to marry him the second time.

¶ 35 But the parties were not engaged when Hart executed the gift letter. Indeed, the parties did not get engaged for the second time until a few months after they moved into the Windsor house. Thus, Appling's later engagement to Hart does not necessarily demonstrate her intent at the time of the execution of the gift letter and the Windsor house purchase. And Hart points to no other

14

basis to conclude that he established the third prong of his claim. Thus, we will not disturb the court's judgment on this claim.

### IV. Appling's Tortious Interference with Contract Claim

¶ 36 Hart contends that the trial court erred by finding against him on Appling's tortious interference with contract claim because "the plain testimony indicated [Appling's] bond with her employer was strengthened, not weakened, by the acknowledged acts." His contentions are both unsupported by the record and underdeveloped.

¶ 37 Hart argues Appling's office manager, Karen McBeth, had stated that she had "seen quite a few bad breakups and this one was nothing different." But Hart mischaracterizes McBeth's testimony. (Notably, Hart does not identify where in the trial transcript McBeth made any such statement.) McBeth acknowledged that this was not the first time in her fifteen years as an office manager (not thirty years, as Hart incorrectly asserts) that personal relationships impacted someone at work. But she said nothing about whether Appling's situation was comparable to other such incidents.

¶ 38    That being said, we acknowledge that Hart correctly suggests that McBeth's testimony generally demonstrated that Appling's employer was supportive, and even protective, of Appling. But he makes no effort in his opening brief to explain how that fact undercuts Appling's claim. For example, he does not recite the elements of tortious interference with contract or identify any element that was not met. Indeed, Hart cites no authority whatsoever in the section of his opening brief setting forth his argument about the tortious interference claim. *See* C.A.R. 28(a)(7)(B) (requiring the appellant to set forth in the argument section of the opening brief "a clear and concise discussion of the grounds" upon which the appellant relies in seeking a reversal of the judgment "with citations to the authorities and parts of the record on which the appellant relies").

¶ 39    True, for the first time in his reply brief, Hart cites *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748 (Colo. 1978), for the proposition that there can be no liability where the third party did not breach the contract. But we decline to consider this reference for two reasons.

¶ 40    First, we will not consider arguments raised for the first time in the reply brief. *See Saint John's Church in the Wilderness v. Scott*, 2012 COA 72, ¶ 9 n.3. This is particularly true here, where the argument in the opening brief reads more as a contention that Appling failed to prove damages, not that she was required to prove a breach and did not do so.

¶ 41    Second, we will not consider "a bald legal proposition presented without argument or development." *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).[4] Hart's reply brief merely reiterated the argument made in the opening brief about how Appling's employer supported her through Hart's inappropriate conduct — again without mentioning in the text of the argument that a showing of breach is required — and inserted the cite to *Radiology Professional Corp.* with a parenthetical

---

[4] To be clear, we take no issue with the general statement of the law articulated in *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748 (Colo. 1978), that the third party's breach of the contract is an element of tortious interference with contract. We simply conclude that Hart does not sufficiently develop an argument that the evidence did not demonstrate such a breach. *See Galvan v. People*, 2020 CO 82, ¶ 45 ("Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised.").

explaining the holding of the case. He did not attempt to tie that holding to his argument or the facts of this case.

¶ 42    Similarly, Hart's contention that "the trial court award[] [of] damages against a single reporting to a licensing board is plainly inconsistent with Appellant's First Amendment rights to petition" is an undeveloped argument, and we therefore do not address it further. *See id.*

¶ 43    In short, because Hart fails to adequately develop or support any of his challenges to the court's resolution of Appling's tortious interference claim, he has not demonstrated that the trial court erred.

## V.    Appling's Request for Sanctions

¶ 44    For the same reasons that Appling contends that we should dismiss Hart's appeal, she also asserts that we should award her attorney fees and double costs as a sanction under C.A.R. 38.

¶ 45    While we acknowledge that Hart's briefs are far from a model of clarity, we were able to glean the substance of at least some arguments (as, it appears, was Appling). *Cf. Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006) (holding that an appeal "'lacks substantial justification' and is 'substantially

frivolous' under [section] 13-17-102(4)[, C.R.S. 2025], when the appellant's briefs fail to set forth, in a manner consistent with C.A.R. 28, a coherent assertion of error, supported by legal authority").

¶ 46     Nor does the protection order against Hart in a different proceeding demonstrate that he acted vexatiously in this case. *See Zivian v. Brooke-Hitching*, 28 P.3d 970, 974 (Colo. App. 2001) ("A vexatious claim or defense is one brought or maintained in bad faith. Bad faith may include conduct that is arbitrary, vexatious, abusive, or stubbornly litigious, and may also include conduct aimed at unwarranted delay or disrespectful of truth and accuracy."); *see also Black v. Black*, 2020 COA 64M, ¶¶ 134-37 (concluding that arguments did not unnecessarily expand the proceedings and were not substantially frivolous, groundless, or vexatious). Finally, while Hart mischaracterized the trial testimony, he did not — contrary to Appling's contention — repeatedly misstate the court's findings.

¶ 47     Thus, although this is admittedly a close call, we decline Appling's request for sanctions.

## VI.   Disposition

¶ 48   The judgment is affirmed.

JUDGE HARRIS and JUDGE BROWN concur.